UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WILLARD PURVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00006-JRS-DLP |
| | ) | |
| ARAMARK CORRECTIONAL SERVICES, LLC, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting in Part and Denying in Part Motion for Summary Judgment**

Plaintiff Willard Purvis, an inmate at the Wabash Valley Correctional Facility ("Wabash Valley"), brought this action pursuant to 42 U.S.C. § 1983 alleging that he was denied a job in the prison kitchen and that this action was the result of retaliation against him in violation of his First Amendment rights. He sues Ms. Adams, Daniel Bedwell, Mr. Hollingsworth, and Amy Strader, food service employees who are employed by Aramark Correctional Services ("Aramark"). He also sues Aramark alleging that Aramark engaged in a policy or practice of retaliating against prisoners. The defendants have moved for summary judgment on Mr. Purvis's claims. Mr. Purvis has responded and the defendants have replied. For the following reasons, the motion for summary judgment is **granted in part and denied in part**.

**I. Summary Judgment Standard**

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Barbera v. Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir. 2018). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

## II. Facts

Daniel Bedwell is the Food Services Director for Aramark at Wabash Valley. Dkt. 35-1 ¶ 2. Mr. Bedwell oversees all aspects of food service at the Wabash Valley. *Id*. ¶ 3. The Indiana Department of Correction ("IDOC") expects Mr. Bedwell to report any safety and security concerns he may have with regards to inmate work assignments to the Custody Department. *Id*. ¶ 6.

Amy Strader is the lead supervisor for Aramark at Wabash Valley. Dkt. 35-2 ¶ 2. Ms. Strader's job duties include placing, evaluating, and training offenders at Wabash Valley. Ms. Strader has the authority to place inmates for positions in the kitchen at Wabash Valley. *Id.* ¶ 3.

Teresa Booker held a position as a Sergeant in the Custody Department for the IDOC. Dkt. 35-1 ¶ 5.

To obtain a position in the kitchen at Wabash Valley, an inmate must fill out a request for interview form. Dkt. 35-1 ¶ 4. This form is then passed on to the Custody Department. *Id.* The Custody Department investigates the inmate requesting the job assignment. Custody investigates

any gang activity, behavioral issues, and security concerns regarding the inmate. *Id.* Once their investigation is complete the Custody Department then determines if the inmate should be sent for an interview. *Id.* Aramark is then sent a list of inmates available for interview. *Id.*

On August 24, 2017, Ms. Booker from the Custody Department contacted Mr. Bedwell as part of her investigation of Mr. Purvis. *Id.* ¶ 5. Mr. Bedwell informed Ms. Booker that he believed Mr. Purvis presented a security risk to Mr. Bedwell and his employees because of a pending lawsuit that Mr. Purvis had against Bedwell and Aramark.[1] *Id.* ¶ 7. In his lawsuit Mr. Purvis claimed that he was allergic to mustard, and that Mr. Bedwell was denying him a diet free of mustard, which was causing him harm. *Id.* As a result of the allegations that Mr. Bedwell was causing harm to Mr. Purvis by denying him his requested diet, Mr. Bedwell states that he was concerned regarding his personal safety and the safety of his staff. *Id.*

Mr. Purvis has never threatened Mr. Bedwell, any food service employee, or other prisoner working in the kitchen. Dkt. 47, at 9, ¶ 14, 15.

After the August 24, 2017 email, Ms. Booker called Ms. Strader to discuss Mr. Purvis. During this conversation Ms. Booker told Ms. Strader that Mr. Purvis had a lawsuit pending against Aramark. This was first time Strader heard about any lawsuit between Aramark and Mr. Purvis. Dkt. 35-2. ¶ 5.

Ms. Booker told Mr. Purvis that "she was informed that [Mr. Purvis] would not be hire[d] in the kitchen by numerous ARAMARK employees, including Mr. Bedwell, Mrs. Strader, Mr. Hollingsworth, Mrs. Adams." Dkt. 47, at 9, ¶ 13.

---

[1] Mr. Purvis points out that the lawsuit to which Mr. Bedwell refers was closed in 2016 and concludes that Bedwell has therefore testified falsely when he stated that he thought Purvis presented a safety risk "because of a pending lawsuit." But Mr. Bedwell's affidavit accurately reflects the contents of his email message, which states, "I don't know that would be a good idea he has had a law suit out on Lisa and I from years ago and I don't even know if its settled yet." Dkt. 38-1, p. 12. Mr. Purvis has therefore failed to show that Bedwell has testified falsely.

Aramark does not have a policy of denying inmates placement in the kitchen who have filed lawsuits or grievances against the company or its employees. Dkt. 35-1 ¶ 8 Aramark leaves these decisions to the IDOC. *Id.* Aramark currently has inmates placed in the Wabash Valley kitchen who have previously filed lawsuits/grievances. Once the inmates clear the IDOC evaluation, they are free for placement. *Id.*

### III. Discussion

Mr. Purvis alleges that the defendants retaliated against him by denying him a job in the kitchen and that Aramark maintains a practice of retaliating against inmates. The defendants move for summary judgment on these claims. The claims against the individual defendants and Aramark will be discussed separately.

A. *The Individual Defendants*

The individual defendants move for summary judgment arguing that they did not retaliate against Mr. Purvis. To prevail on a First Amendment retaliation claim, a plaintiff must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

1. <u>Protected Activity</u>

Here, the defendants do not dispute that Mr. Purvis has satisfied the first element of his retaliation claim. His previous lawsuit was activity protected by the First Amendment.

2. <u>Deprivation Likely to Deter First Amendment Activity</u>

The defendants do argue that Mr. Purvis has failed to satisfy the second element – that Mr. Purvis suffered a deprivation that would likely deter First Amendment activity. The defendants

argue that this is because IDOC staff, not the defendants, made the decision not to place Mr. Purvis in a kitchen position. But the defendants do not argue that the deprivation Mr. Purvis suffered – the denial of the requested job in the kitchen – would be likely to deter First Amendment activity. And the Seventh Circuit has held that "prison officials cannot deny an inmate a job in retaliation for exercising his constitutional right to file grievances or lawsuits." *Stewart v. Smith*, 124 F.3d 205 (7th Cir. 1997) (citing *Williams v. Meese,* 926 F.2d 994, 998 (10th Cir. 1991); *Frazier v, Dubois,* 922 F.2d 560, 561-62 (10th Cir. 1990)). Mr. Purvis has therefore satisfied this element for purposes of summary judgment.

While the defendants phrase this argument as related to the second element of a retaliation claim, it is better understood as an argument that the defendants were not personally responsible for the deprivation. "Individual liability under § 1983… requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf-Lillie*, 699 F.2d at 869. Here, there is no evidence that Mr. Adams, Mr. Hollingsworth, or Ms. Strader played any role in the decision not to hire Mr. Purvis in the kitchen. Mr. Purvis contends that he was told that these defendants had informed others that he would not be hired in the kitchen, but this testimony supports only a conclusion that these defendants relayed information. It does not support a conclusion that any of these defendants had any authority over this decision. In addition, while there is evidence that Ms. Strader knew about the decision, there is no evidence that she played a part in it. Because these defendants were not involved in the decision not to hire Mr. Purvis in the kitchen, they are entitled to summary judgment on this basis.

But the same reasoning does not apply to the claim against Mr. Bedwell. The undisputed evidence is that Ms. Booker contacted Mr. Bedwell as part of her investigation of Mr. Purvis's request to work in the kitchen. Mr. Bedwell responded that he did not believe it would be a good idea to hire Mr. Purvis in the kitchen because of his lawsuit. Mr. Bedwell argues that he was required to participate in the investigation and the ultimate decision regarding job placement is up to custody staff. But whether or not Mr. Bedwell had the ultimate authority to determine who to hire in the kitchen, a jury could reasonably infer from these facts that his advice was taken and that he therefore participated in the decision not to hire Mr. Purvis.

### 3. Motivating Factor

Mr. Bedwell next argues that he is entitled to summary judgment on the third element of retaliation because his reporting on Mr. Purvis's lawsuit was based on IDOC policy and safety concerns, not because of Mr. Purvis's lawsuit.

To satisfy the third element of a retaliation claim, the plaintiff must present evidence that would raise a genuine issue of material fact regarding whether there is a "causal link between the protected act and the alleged retaliation." *See McKinely v. Schoenbeck*, 731 F. Appx. 511, 514 (7th Cir. 2018) (quoting *Roger Whitmore's Automotive Servs., Inc. v. Lake Cty. Ill.*, 424 F.3d 659, 669 (7th Cir. 2005)). Mr. Purvis has identified a statement by Mr. Bedwell linking his lawsuit to the denial of a job in the kitchen. That is Mr. Bedwell's statement that he did not believe it would be a good idea to hire Mr. Purvis in the kitchen because he had a lawsuit. Based on this statement, a reasonable jury could infer that Mr. Purvis's lawsuit was a motivating factor for his denial of the job.

Mr. Bedwell contends that he did not recommend hiring Mr. Purvis because he was concerned about his safety and that of his staff. He concludes therefore, that the lawsuit itself was

not the motivating factor in his decision not to recommend Mr. Purvis for the job. But Mr. Purvis points out that the lawsuit at issue was settled before he applied for the job in the kitchen and that he has never threatened Mr. Bedwell, any other food service employee, or other prisoner working in the kitchen. This evidence is enough to lead a reasonable jury to conclude that Mr. Bedwell's proffered reason for failing to recommend Mr. Purvis is pretext and that the real reason was retaliation. *Id.* at 515 (citing *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011)).

Mr. Purvis has presented a genuine issue of material fact on the second and third elements of his retaliation claim against Mr. Bedwell and Mr. Bedwell therefore is not entitled summary judgment.

B. *Aramark*

Aramark moves for summary judgment arguing that it did not have a policy or practice that caused the deprivation of Mr. Purvis's rights. Because Aramark acts under color of state law by contracting to perform a government function – providing food service to correctional facilities, it is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 fn.6 (7th Cir. 2002). This means that, to show that Aramark violated his rights, Mr. Purvis must show that he suffered a constitutional deprivation as the result of an express policy or custom of Aramark. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Social Servs. of New York,* 436 U.S. 658, 690 (7th Cir. 2010)). "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med.*

*Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (citing *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)).

It is undisputed that Aramark does not have a policy of refusing to place prisoners in kitchen jobs because they have filed lawsuits or grievances. Further, there are currently inmates in the Wabash Valley kitchen who have previously filed lawsuits and/or grievances. In response, Mr. Purvis argues that he has repeatedly sought and been denied a job in the kitchen. But, even if this is true, it is not enough to allow a jury to conclude that Aramark had a widespread practice or policy of retaliation. *Cf. Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 531 (7th Cir. 2000) (requiring a series of constitutional violations to raise an inference of a policy on the part of a municipal defendant). Aramark is therefore entitled to summary judgment on Mr. Purvis's claims.

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [33], is **granted in part and denied in part**. The motion is **granted** as to all claims against defendants Adams, Hollingsworth, Strader, and Aramark. The claims against these defendants are dismissed and the **clerk shall** terminate these defendants on the docket. The motion is **denied** as to defendant Bedwell. No partial final judgment shall issue as to the claims resolved in this Order.

The Court will direct further proceedings on the claims against Mr. Bedwell, including setting a settlement conference, in a separate order. If Mr. Purvis wants to request that the Court assist him in recruiting counsel to represent him, he should file a motion on the Court's form. The **clerk shall include** a form motion for assistance with recruiting counsel with Mr. Purvis's copy of this Order.

**IT IS SO ORDERED.**

Date: 8/13/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

WILLARD PURVIS
985367
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com